UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FIRST SPECIALTY INSURANCE CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:12-CV-186 JD<br>)<br>) Consolidated with Case No. 3:14-CV-1613 |
| SUPREME CORPORATION, a subsidiary of SUPREME INDUSTRIES, INC., | )<br>)<br>)<br>) |
| Defendant. | ) |

## **OPINION AND ORDER**

This insurance coverage dispute arises from a 2012 lawsuit filed in Washington state courts against Supreme Corporation. In that case, King County (Washington) alleged various defects and problems with 35 medium duty buses that Supreme sold to it. Those defects caused noxious fumes to leak into the buses' cabins, leading to numerous complaints from drivers and passengers of "burning and irritation in their eyes, ears, noses, and throats, as well as nausea and headaches." [DE 3-1 ¶ 35] Supreme's insurer, First Specialty Insurance Corporation, denied coverage and filed these now-consolidated actions for declaratory judgment.

The King County lawsuit has long since settled, and in September 2015, this Court (then, Judge James T. Moody) ruled on summary judgment that First Specialty owed Supreme a duty to defend in the underlying litigation. [DE 34 (the "Duty to Defend Order")] Over *two years* later, First Specialty filed a motion to reconsider Judge Moody's opinion on the issue of its duty to defend. [DE 99] That motion is now ripe for review, as are both parties' cross motions for partial summary judgment on the issues of defense costs, number of occurrences, prejudgment interest,

1

and First Specialty's duty to indemnify.[1] [DE 98; DE 102; DE 104] For the reasons stated herein, the Court will deny First Specialty's motion to reconsider the issue of its duty to defend, deny First Specialty's motions for partial summary judgment, and grant partial summary judgment in favor of Supreme on all these issues.

## I. Motion for Reconsideration

As stated above, the Court previously held that First Specialty had a duty to defend in the King County litigation. [DE 34] In reaching that conclusion, Judge Moody reasoned that the underlying complaint contained broad enough allegations so as to include claims for damages "because of 'bodily injury,'" which, as defined in the policy, triggered coverage. [DE 3-2 at 26-27] In particular, "under the liberal standards which apply to notice pleading," King County could seek damages for "its own financial losses caused by drivers' and passengers' efforts to hold [it] liable" for their illnesses, as well as damages for any loss of services resulting from the bodily injury to its drivers. [DE 34 at 7] In so holding, the Court rejected First Specialty's arguments regarding the complaint's lack of express language, allegations of bus driver and passenger illnesses, Washington workers' compensation law, and King County's discovery responses. *See generally id.*

Turning to the instant motion, under Rule 54(b), an order adjudicating "fewer than all the claims or rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Courts have the inherent power to reconsider non-final orders, as justice requires, before entry of judgment." *Bd. of Trustees of Univ. of Ill. v. Micron Tech., Inc.*, 245 F. Supp. 3d 1036, 1044 (C.D. Ill. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

---

[1] Neither party has moved for summary judgment as to the amount of Supreme's indemnity damages.

*Corp.*, 460 U.S. 1 (1983); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007)). Motions to reconsider interlocutory orders "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted). The Seventh Circuit has emphasized that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Motions for reconsideration are "not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse*, 90 F.3d at 1269-70 (7th Cir. 1996); *In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992), *aff'd*, 4 F.3d 997 (7th Cir. 1993) ("[M]otions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."). First Specialty's motion to reconsider ignores this rule, however, as the majority of the arguments contained therein were already raised before, considered, and rejected by this Court nearly three years ago. To illustrate, First Specialty argues that King County's lawsuit did not create a duty to defend because: King County's complaint itself did not expressly seek to hold Supreme liable for damages due to bodily injury; the allegations regarding bus driver and passenger illnesses in King County's complaint merely provided illustration and had no legal effect; Washington workers' compensation law precluded King County from recovering damages for bodily injury suffered by its employees, including incidental or consequential damages stemming from those injuries; and King County's discovery responses had no bearing

3

on the duty to defend. [DE 101 at 4-14] Yet, the Court rejected these arguments and set forth its rationale as to each in the Duty to Defend Order. First Specialty's concerns at this stage thus boil down to a disagreement with Judge Moody's reasoning, which does not provide the proper basis for a motion to reconsider. *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) ("It is well established that a motion to reconsider is only appropriate where … the court has made an error of apprehension *(not of reasoning)* ….") (emphasis added).

First Specialty additionally cites to *Madison Mutual Ins. Co. v. Diamond State Ins. Co.*, which post-dates the Duty to Defend Order, in support of its position that the allegations of driver and passenger illnesses in the King County complaint provided only explanatory background and did not create a duty to defend. 851 F.3d 749, 756 (7th Cir. 2017). But *Madison Mutual* promulgates no new law that would upset Judge Moody's ruling, and it can be distinguished on factual grounds. In *Madison Mutual*, the plaintiff alleged that the insurer breached its duty to defend a real estate agent in a harassment suit under the professional liability errors and omissions policy the insurer provided her. *See generally id.* In ruling that the insurer had no duty to defend, the district court reasoned that factual statements in the complaint regarding the real estate agent's omissions about a permit did not trigger coverage because they stood apart from the wrongful acts alleged in the harassment complaint. *Id.* at 752-53. The Seventh Circuit affirmed, noting that the permit allegations constituted a "small subset of factual allegations that overlap[ped] with the factual underpinnings" of an earlier lawsuit arising out of the professional services the real estate agent provided. *Id.* at 755. While these allegations provided explanatory background for the alleged harassment, the harassment lawsuit itself contained "no allegation of injury resulting from" the realtor's failure to disclose the permit

4

issue. *Id.* at 755-56. Therefore, the harassment allegations at issue did not invoke the realtor's professional liability coverage. *Id.* at 756.

Here, Judge Moody rejected First Specialty's contention that King County included the allegations of bus driver and passenger illness in its complaint merely as context for the County's decision to remove the defective buses from service. [DE 34 at 5-7] In contrast to *Madison Mutual*, the allegations regarding drivers and passengers falling ill from breathing in noxious fumes – a "bodily injury" triggering coverage under the policy – provided more than just "explanatory background" and were not separate and distinct from King County's theories of recovery. Indeed, the Court reasoned that the complaint left open the potential for King County to seek damages for financial losses *it* incurred from the drivers being sick (i.e., overtime pay or temporary hires to cover their absences), as well as drivers' and passengers' independent efforts to hold it liable for their illnesses.[2] Contesting the Court's Duty to Defend Order in this regard with nothing more than a factually distinguishable case (albeit a recent one) represents, again,

---

[2] First Specialty's argument that Judge Moody improperly premised this reasoning on hypothetical allegations also fails. The Court did no such thing, and First Specialty does not even point to a specific hypothetical to contest. Instead, the Court focused on the actual allegations contained in the King County complaint, and afforded them the appropriate liberal construction in determining whether a duty to defend existed. *See Madison Mutual*, 851 F.3d at 753 ("In determining whether the insurer has a duty to defend, a court … accord[s] [sic] both the complaint and the policy a liberal construction."). Under this liberal standard, an insurer "cannot refuse to defend unless it is *clear* that the underlying allegations do not bring the case *even potentially* within the scope of coverage." *Id.* (emphasis added). Thus, "[i]f *any* portion of the complaint in the underlying litigation *potentially* falls within the coverage provided by the policy, the insurer must defend the entire suit." *Id*. (emphasis added). Applying this framework, Judge Moody reasoned that the factual allegations of bodily injury in the underlying complaint created a potential avenue of recovery for King County, such as for damages stemming from loss of services or from drivers' and passengers' own efforts to hold the County responsible for their illness. Judge Moody articulated a potentiality based on what was actually alleged, not a hypothetical; no amendment would be required to bring the complaint within the policy's coverage. *See Medmarc Cas. Ins. Co. v. Avent America, Inc.*, 612 F.3d 607, 617-18 (7th Cir. 2010) (rejecting the notion that a duty to defend could be triggered by "the mere possibility that a complaint, which on its face falls outside the parameters of the insurance policy, could be amended at some future point in a manner that would bring the complaint within the coverage limits.").

5

mere disappointment with the earlier outcome on First Specialty's part. This is not a satisfactory foundation for a motion to reconsider.

For related reasons, First Specialty's reliance on another recent decision, *Carrera v. Olmstead*, 196 Wash. App. 240 (Wash. Ct. App. 2016), is misplaced. In *Carrera*, the Washington appellate court addressed whether, under state statute, the assignee of an injured employee's worker's compensation claim could independently pursue a separate cause of action. *See generally id.* First Specialty cites *Carrera* for the proposition that King County, as an employer, "ha[d] no separate claim of its own by which it [could] seek recovery against a third party (such as Supreme) for any bodily injury to its employee (the bus operators) even if the employee ha[d] assigned his or her claim to the employer …." [DE 101 at 7] The Court need not concern itself with whether First Specialty accurately interprets *Carrera*, however, because even if *Carrera* prevented King County from pursuing claims for bodily injury on behalf of its injured drivers, such an interpretation has no bearing on First Specialty's duty to defend under the policy, especially where the policy defines "damages because of bodily injury" to include damages claimed by an "*organization* for care, *loss of services* or death" resulting from the bodily injury itself. [DE 3-2 at 27 (emphasis added)] In other words, the possibility that King County could never have sued Supreme on behalf of its drivers for their illness did not negate its right to bring claims against Supreme on its *own behalf* for damages that resulted from Supreme having to respond to driver illness, find replacement drivers, etc. This potentiality alone supports a finding that First Specialty had a duty to defend in the King County litigation.

Raised for the first time in its motion to reconsider, First Specialty also maintains that King County had no standing to sue on behalf of injured passengers. [DE 101 at 9-10] First Specialty's standing argument, however, fails for two reasons. First, its argument misconstrues

6

the Court's ruling. The Duty to Defend Order did not suggest that King County may litigate on behalf of injured passengers; rather, the Court considered the possibility that, again, "the County could seek damages for its *own* financial losses *caused by passengers' efforts* to hold the County liable." [DE 34 at 7 (emphasis added)] Second, nothing precluded First Specialty from presenting this standing argument during the prior round of summary judgment, and First Specialty provides no reason, let alone a compelling one, for why it deserves a second bite at the apple here. *See Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) ("Motions to reconsider are granted for 'compelling reasons,' … not for addressing arguments that a party should have raised earlier.") (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006)). Nor does First Specialty rely on a new proposition of law or newly discovered evidence. In essence, nothing has changed since First Specialty initially sought summary judgment on its duty to defend, which renders its motion for reconsideration inappropriate.

For all the aforementioned reasons, the Court will deny First Specialty's motion to reconsider the Duty to Defend Order. To reiterate, "because the underlying complaint in this action contained allegations which were broad enough to include claims for damages because of bodily injury, First Specialty had a duty to defend." [DE 34 at 8] "[A]n insurer has a duty to defend its insured against suits alleging facts that *might* fall within the coverage." *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997) (emphasis added). This duty is an "expansive" one, arising *whenever* the facts alleged in the complaint, if proved true, trigger coverage. *Id.*

## II. Partial Summary Judgment

With the matter of First Specialty's duty to defend out of the way, the Court now turns to the parties' cross motions for partial summary judgment on the outstanding issues of recoverable

7

defense costs and indemnification. [DE 98; DE 102; DE 104] Much of the relevant facts, including pertinent policy language and allegations in the King County complaint, have been set forth in the Court's Duty to Defend Order. [DE 34] For efficiency's sake, the Court adopts its prior discussion of the facts here. In addition, the Court notes that the King County litigation, which arose out of a single transaction between the County and Supreme, cost Supreme $918,320.61 to defend. According to its general counsel, who oversaw the case, Supreme paid all of these defense costs by the time the underlying action settled, on June 14, 2013. [Affidavit of John Dorbin ¶ 7]

For the following reasons, the Court will grant partial summary judgment in favor of Supreme on these issues and deny First Specialty's requests for the same.

## STANDARD

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008);

*King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). In a case involving cross motions for summary judgment, that means that each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). Summary judgment may be awarded for part of a claim or defense. Fed. R. Civ. P. 56(a).

Interpretation of written contracts, such as insurance policies, presents questions of law that are particularly appropriate for resolution through summary judgment. *Nat'l Ben Franklin Ins. Co. of Illinois v. Calumet Testing Servs., Inc.*, 60 F. Supp. 2d 837, 839 (N.D. Ind. 1998), *aff'd*, 191 F.3d 456 (7th Cir. 1999) (citing *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995)).

## DISCUSSION

Four core questions guide this case: (1) did First Specialty owe Supreme a duty to defend in the King County litigation; (2) if yes, what are Supreme's recoverable defense cost damages; (3) does First Specialty owe Supreme a duty to indemnify Supreme's settlement with King County; and (4) if yes, how much of the settlement amount can Supreme recover from First Specialty? While the first question has already been answered (twice, now) with a "yes," the present summary judgment filings argue over the second and third questions. For the following reasons, the Court determines that Supreme may recover defense costs of **$818,320.61** in principal, that Supreme is entitled to prejudgment interest as a matter of law, and that First Specialty has a duty to indemnify Supreme. The parties leave the final question on indemnity amount for trial.

9

A.     **Supreme's Recoverable Defense Costs**

Supreme maintains it spent $918,320.61 defending itself in the King County litigation, and First Specialty does not dispute that amount or its reasonableness, let alone respond to Supreme's motion on that issue. *See Milligan v. Bd. of Trs. of So. Ill. Univ.*, 686 F.3d 378, 389 (7th Cir. 2012) ("It is a well-settled rule that a part opposing a summary judgment motion must inform the trial judge of the reasons, legal *or factual*, why summary judgment should not be entered.").[3] They do, however, hotly contest how much of that sum First Specialty owes to Supreme for declining to defend on Supreme's behalf. To answer that question, the Court first examines the insurance policy itself, which includes a self-insured retention ("SIR") for defense and loss in the amount of $100,000 "per occurrence." [DE 3-2 at 9][4] The SIR operates by deducting $100,000 from the amount of Supreme's defense costs, once for every "occurrence." For example, if only one occurrence can be found in the underlying case, then Supreme's

---

[3] The Court separately notes that Supreme "had an incentive to minimize its legal expenses (for it might not be able to shift them)" after First Specialty refused to defend, and "where there are market incentives to economize, there is no occasion for a painstaking judicial review" of an insured's defense costs. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004); *see also Transflo Terminal Servs., Inc. v. Savage Servs. Corp.*, Cause No. 2:10-CV-80, 2016 WL 362368, at *6 (N.D. Ind. Jan. 29, 2016) (citing *Taco Bell* and determining that insured's defense fees were reasonable where insurer refused insured's demand for defense). As the *Thomson* court explained, this presumption of reasonableness rests on two principles:

> First, the policyholder, which is defending itself without an assurance it will be reimbursed, provides a market-based check on the amounts spent, a better check than any court can provide after-the-fact. Second, it is unfair to let a breaching insurer nit-pick costs later when it could have—had it honored its duty to defend—initially directed the defense in any reasonable way it wished. *Taco Bell*, 388 F.3d at 1077.

*Thomson Inc. v. In. Co. of N. Am.*, 11 N.E.3d 982, 1024 (Ind. Ct. App. 2014). An insured's payment of its own fees "is not 'evidence' about market value; it *is* market value." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). "The market has checked the fees, and the insurer cannot second guess the work done or amounts paid where it has failed to accept its defense duty." *Thomson*, 11 N.E.3d at 1125.

[4] The parties agree that Indiana law governs the interpretation of the insurance policy at issue. [DE 20 at 3]

recoverable amount equals $818,320.61 ($918,320.61 – $100,000). On the other hand, if the King County litigation involved five occurrences, then Supreme may recover only $418,320.61 ($918,320.61 – $500,000). The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 39.

Supreme argues that, because the bodily injuries here all stemmed from the same transaction (Supreme's single sale of a batch of 35 buses to King County), this case involves but one "occurrence" under the policy. Supreme relies on *Thomson Inc. v. Insurance Co. of N. Am.*, the only Indiana appellate opinion located by the Court that addresses what constitutes an "occurrence" in the presence of several claimed injuries. 11 N.E.3d 982 (Ind. Ct. App. 2014). In *Thomson*, an electronics manufacturer sued its primary and umbrella liability insurers, seeking defense and indemnification costs relating to its Taiwanese factory workers' class-action lawsuit against the company. *See generally id.* The workers "sought damages for bodily injury allegedly resulting from exposure to organic solvents" while working in a particular manufacturing plant. *Id.* at 987. Notably, the policy in *Thomson* defined "occurrence" with the exact same language as here: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 1001. Turning to Indiana federal courts and Illinois state law for guidance, the *Thomson* court found that the plant workers' repeated and continual exposure to toxins constituted a single occurrence under the "cause" theory, in light of the policy's language and the factual circumstances. *Id.* at 1001-06.[5]

The "cause" theory requires courts to determine an occurrence by "evaluating the cause or causes of the resulting injury" and then "ask[ing] if there was but one proximate,

---

[5] The workers also claimed bodily injury from the company's illegal dumping of chemicals that tainted the local water supply workers used for drinking and bathing in their dormitories. The court found that claim to be a separate occurrence from the exposure sustained at the plant. 11 N.E.3d at 1006.

11

uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Id.* at 1001 (quotations omitted). To illustrate, assume that a motorist is traveling down a street with parked cars. By accident, the motorist swerves and strikes the sides of three of the parked cars in succession, damaging each of them. Under the cause theory, "the fact that the damage to all three vehicles results from the same conditions and was inflicted as part of an unbroken and uninterrupted continuum would yield the conclusion that there was only one occurrence." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286-87 (Ill. 2006) (cited with approval by *Thomson*).

In the context of bodily injury arising from defective manufactured goods – more applicable to the present case – *Thomson* noted that two federal district courts in Indiana have adopted the "cause" theory and in doing so "have refused to tie the number of occurrences to the number of claimants." 11 N.E.3d at 1001-02 (citing *Irving Materials, Inc. v. Zurich Am. Ins. Co.*, No. 1:03-CV-361, 2007 WL 1035098 (S.D. Ind. Mar. 30, 2007) and *Ind. Gas Co., Inc. v. Aetna Cas. & Sur. Co.*, 951 F. Supp. 773 (N.D. Ind. 1996), *vacated on other grounds by Ind. Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998)). Instead, "[c]ourts are to identify *the event for which the insured is liable under their contract* … rather than some other event in the causal chain …." *Irving Materials*, 2007 WL 1035098, at *20 (emphasis added and citing *Dicola v. Am. S.S. Owners Mut. Protection & Indem. Assoc.*, 158 F.3d 65, 80 (2d Cir. 1998)). Therefore, each *sale* of defective products by the manufacturer constitutes an occurrence because the sale itself gives rise to the insured's liability. *See id.* at **18-19 (citing *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204 (5th Cir. 1971) (holding each sale of contaminated bird seed constituted an occurrence because the sales generated the exposure to liability); *Michigan*

12

*Chem. Corp. v. Am. Home Assurance Co.*, 728 F.2d 374 (3d Cir. 1982) (explaining that the cause of the occurrence is the act that gives rise to the insured's liability)).

Here, King County and Supreme consummated the sale of 35 buses as a single transaction. [Dorbin Aff. ¶ 11 (King County's claims "[arose] out of one sale transaction between Supreme and King County.")][6] First Specialty presents no evidence to the contrary. It does, however, argue that the number of occurrences should be based on the number of drivers who sustained medical expenses as a result of their illnesses (five), or, alternatively, on the number of defective parts that caused those illnesses (four). Aside from the fact that this position ignores the instances of passenger illnesses alleged in the King County complaint, the *Thomson* court rejected these very same arguments. 11 N.E.3d at 1006 ("The specific means and timing of exposure and the resulting injuries may differ with respect to each [injured worker], but it is undeniable that the alleged injuries were caused by 'continuous or repeated exposure to *substantially* the same *general* harmful conditions' in the factory and in the dormitories.").

---

[6] First Specialty's motion to strike seeks to strike the entire last sentence of Paragraph 11 of Dorbin's Affidavit. [DE 110 ¶¶ 4-6] That sentence reads: "Instead, [the victims'] alleged bodily injuries were rolled into the damages claimed by King County, and so the Washington lawsuit was brought as one action, defended as one action, and settled as one action—all arising out of one sale transaction between Supreme and King County." The Court will decline First Specialty's request as to Dorbin's sworn "one sale transaction" statement for several reasons. First, based on First Specialty's proffered rationale for striking that sentence, it is clear that First Specialty takes issue with Dorbin's description of King County's litigation strategy, not with the stated fact that the litigation stemmed from a single transaction: "[Dorbin] has no direct or first-hand knowledge as to King County's rationale or reasoning behind the various causes of action." [DE 110 ¶ 6] Second, First Specialty's motion provides no basis to strike Dorbin's statement that King County purchased the buses from Supreme through one transaction, and the Court will not invent one. Indeed, Dorbin provides a basis for such knowledge: as Supreme's general counsel, he oversaw the company's defense of the King County lawsuit. [Dorbin Aff. ¶ 3] Granted, as Supreme's lawyer, he might not be able to speak to King County's tactics, but surely he can speak to whether the underlying causes of action stemmed from one or more contracts based on his supervisory role. The Court further notes that the remainder of First Specialty's motion to strike will be denied as moot, as the Court's conclusions in this Order would be the same with or without the remaining portions of Dorbin's Affidavit that First Specialty seeks to strike.

13

Here, the timing and nature of the drivers' illnesses may differ as to each driver, and the buses may have suffered from a multitude of defects that caused noxious fumes to seep into the cabin, but the bodily injury resulted from substantially the same general conditions: exposure to noxious fumes caused by defective bus parts. That exposure was continuous for at least as long as it took to render the drivers ill. *Thomson*'s holding is therefore consistent with that in *Mason v. Home Ins. Co. of Illinois*, 177 Ill. App. 3d 454 (1988), which First Specialty attempts to distinguish. In *Mason*, it so happened that each sale of tainted food to restaurant-goers resulted in a bodily injury, but the number of reported illnesses stemming from the consumption of the tainted food did not determine the number of occurrences. Rather, "[t]he 'occurrence' to which the policy refer[red] is the occurrence or events for which the insured was liable, and here, the insured incurred liability for *serving* its patrons contaminated food." *Id.* at 460 (emphasis added). Similarly here, the *sale* of the defective buses to King County exposed Supreme to liability, and so that sale dictates the number of occurrences. After all, Supreme could never be held liable if it never sold the defective buses to King County in the first place. *See id.* ("So long as the [restaurant] retained possession of the tainted food, no liability could result.").

Nor does it matter that the sale here involved 35 buses rather than just one bus; each transaction is to be deemed an occurrence under the insurance contract:

> If delivery required multiple trucks to get a particular batch of concrete to a job site in order to fulfill a specific contract, that, too, would constitute a single occurrence, even if multiple pours were made from the same batch of concrete around the job site, since delivery was made pursuant to a single contract requiring IMI to supply the concrete to a particular third-party purchaser.

*Irving Materials*, 2007 WL 1035098, at *21; *see also Uniroyal, Inc. v. Home Ins.*, 707 F. Supp. 1368, 1380 (E.D.N.Y. 1988) ("The number of deliveries was happenstance, determined by the size of available transportation freight cars and in no way by the military's need for 110 separate

'pieces' of herbicide."). The underlying lawsuit involved a single sale by which Supreme exposed itself to liability. As a consequence, the Court finds there to be only one occurrence here. Subtracting $100,000 under the SIR from Supreme's defense costs results in a recoverable principal amount of **$818,320.61**.

On top of this principal, Supreme may also recover prejudgment interest as a matter of law. "Under Indiana law prejudgment interest is 'proper when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue.'" *Ind. Ins. Co. v. Granite State Ins. Co.*, 689 F. Supp. 1549, 1563 (S.D. Ind.1988) (quoting *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir. 1985)). Awarding prejudgment interest is "not a matter of discretion." *Sand Creek Country Club v. CSO Architecture*, 582 N.E.2d 872, 875-76 (Ind. Ct. App. 1991).

First Specialty opposes any award of prejudgment interest for lack of an ascertainable damages amount "at least until the Court decides the number of occurrences" in this case. [DE 114 at 2] But now that the Court has found only one occurrence here, First Specialty's line of argument is rendered moot. *See Sand Creek*, 582 N.E.2d at 876 ("An award of prejudgment interest in a contract case in Indiana is warranted if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation. Thus, the award is proper where the trier of fact need not exercise its judgment to assess the amount of damages.") (internal citations omitted).

The prejudgment interest rate is set by statute at eight percent *per annum*. Ind. Code § 24-4.6-1-102. "Prejudgment interest is computed from the time the principal amount was demanded or due." *Wilson v. Montgomery Ward & Co.*, 610 F. Supp. 1035, 1041 (N.D. Ind. 1985). Because First Specialty had a duty to defend Supreme and pay on behalf of Supreme under First

Specialty's insurance contract, all amounts were due from First Specialty when Supreme paid them. *Fed. Ins. Co. v. Stroh Brewery Co.*, 35 F. Supp. 2d 650, 663 (N.D. Ind. 1998) (citing 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 9.23 at 71 (3d ed. 1995) ("Absent a controlling statute, prejudgment interest should run from the date on which the insured's claim should have been paid. In the case of a liability policy, the debt is due on the date the insured makes a payment that the carrier was obligated to make.")); *see also Hizer v. Gen. Motors Corp., Allison Gas Turbine Div.*, 888 F. Supp. 1453, 1464 (S.D. Ind. 1995) (stating "[t]he central governing principle … is that interest—whether prejudgment or interest on delayed payment—begins to run from the time payment is due under the governing contract. RESTATEMENT (SECOND) OF CONTRACTS §§ 354 and cmt. c (1979) (interest recoverable from time for performance)").

The parties do not dispute that, by the time the King County litigation settled on June 14, 2013, Supreme had paid $918,320.61 in defense costs. [DE 100 at 2 (citing Dorbin Aff. ¶ 7)][7] Supreme is therefore entitled to prejudgment interest as a matter of law, at a rate of eight percent *per annum* calculated from June 14, 2013.

**B.     Duty to Indemnify**

The third core question in this case is whether First Specialty has a duty to indemnify Supreme for Supreme's settlement with King County. Whether a duty to indemnify actually exists turns on interpreting the insurance policy itself. "Under Indiana law, a contract for insurance is subject to the same rules of interpretation as are other contracts." *Worth v. Tamarack Am., a Div. of Great Am. Ins. Co.*, 47 F. Supp. 2d 1087, 1094 (S.D. Ind. 1999), *aff'd sub nom.* 210 F.3d 377 (7th Cir. 2000) (citing *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 537-38

---

[7] The cited portion of Dorbin's Affidavit pertaining to defense costs is not the subject of First Specialty's motion to strike. [DE 110]

16

(Ind. 1997)). So, as with other contracts, interpretation of an insurance policy "is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution." *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). And again, such questions of law "are particularly appropriate for resolution by summary judgment." *Calumet Testing*, 60 F. Supp. 2d at 839.

"Where the insured elects to settle the third-party's claim, the settlement is binding on the insurer so long as the claim was within the policy's coverage and the settlement was reasonable and made in good faith." *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 735 (7th Cir. 2012) (citing *Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 842 (S.D. Ind. 2000)). If the insured demonstrates that its claims fall within the scope of the policy's coverage, then the insurer bears the burden of showing that specific exclusions or limitations apply. *See Worth*, 47 F. Supp. 2d at 1095. As discussed above, King County's complaint contained allegations of "damages because of 'bodily injury'" as defined in the policy. Thus, as a matter of simple policy interpretation, Supreme argues – and the Court agrees – that First Specialty's contractual duty to indemnify (at least in some amount) is triggered so long as the settlement resolved potential liability for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." [DE 3-2 at 26] Here, there is no question that Supreme settled the King County lawsuit at least in part out of a concern that further discovery would uncover new claims of bodily injury due to noxious fumes, and that the already-known bodily injury claims would only become stronger with time. [Deposition of Mack Shultz at 78:4-16][8] Indeed, Supreme found it necessary to negotiate a provision in the settlement agreement that

---

[8] Mack Shultz is an attorney who represented Supreme in the King County litigation.

prohibited King County from bringing any future indemnity suits against it for claims of bodily injury. *Id.* at 84:19-24. Because of this, the settlement triggers the policy's indemnity coverage.

First Specialty has presented no exclusions or limitations that would negate this coverage.[9] It does, however, argue that it owes no duty to indemnify (in any amount) because the documented medical costs here ($2,814) could not have been the "primary focus" of the underlying lawsuit and settlement due to their proportionally small size when compared to the settlement sum as a whole. [DE 105 at 16-17] First Specialty cites to *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, an opinion interpreting Illinois (not Indiana) law, for this proposition. 611 F.3d 339 (7th Cir. 2010). The "primary focus" doctrine, however, pertains to *how much* of the settlement must be indemnified by the insurer, not whether a *duty* to indemnify does or does not exist: "[i]n cases where an insured enters into a settlement that disposes of both covered and non-covered claims, the insurer's duty to indemnify encompasses the *entire settlement if* the covered claims were 'a primary focus of the litigation.'" *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 40 (Ill. App. Ct. 2014) (emphasis added and citing *Santa's Best*, 611 F.3d at 352); *see also Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 270-72 (7th Cir. 2016).

Thus, the "primary focus" doctrine helps answer the fourth core question in this case (how much of the settlement must First Specialty pay), not the third question (whether First Specialty must pay at least something). The fourth question, however, is not presently before the Court. Nonetheless, First Specialty argues that it would be "unreasonable as a matter of law to require First Specialty to cover the entire $4.7 million settlement … because of $2,814 in alleged

---

[9] First Specialty provides a lengthy discussion on exclusions that relate to "property damage," but these exclusions serve no purpose here. [DE 105 at 11-15] Supreme has not claimed that the King County litigation involved claims for "property damage" as defined in the policy.

18

bodily injuries, i.e., *0.03%* of all damages sought by King County." [DE 105 at 17] This argument fails for two main reasons. First, Supreme is not asking First Specialty to indemnify the entire amount of the settlement; indeed, Supreme admits that the settlement covered insured and uninsured claims. [DE 100 at 14] Second, First Specialty again ignores the reasoning of Judge Moody's prior order, that damages resulting from bodily injury are not limited to medical costs arising from physical injuries, but may include damages that King County incurred by having to adjust to its sick drivers (i.e., hire replacements, pay for overtime, etc.). For example, First Specialty itself notes that King County sought nearly $700,000 in "increased operations costs" [DE 105 at 5], but completely ignores the possibility that some of those damages may have stemmed from bodily injury, and that the settlement may have covered some of those damages. Essentially, First Specialty is trying to answer Question 3 in this case with a non-Indiana doctrine that deals with Question 4, and so none of its arguments create a question regarding its *duty* to indemnify Supreme for sums it paid "as damages because of 'bodily injury.'" [DE 3-2 at 26] The only issue remaining is *how much* of the settlement must be indemnified by First Specialty, and both parties have reserved that determination for the factfinder.

## CONCLUSION

To summarize, the Court DENIES First Specialty's Motion to Reconsider [DE 99], and in doing so reaffirms the answer to the first core question in this case: whether First Specialty had a duty to defend Supreme in the King County litigation. The answer to that question is "yes." As to the amount of Supreme's recoverable defense costs, Supreme may recover **$818,320.61** in principal from First Specialty. Supreme is further entitled to prejudgment interest as a matter of law, at a rate of eight percent *per annum* calculated from June 14, 2013. Regarding the question

of whether First Specialty has a duty to indemnify Supreme, the answer is also "yes." As a result, the Court GRANTS Supreme's Motion for Partial Summary Judgment on these questions [DE 98] and DENIES First Specialty's Motions for the same. [DE 102; DE 104] Lastly, the Court DENIES First Specialty's Motion to Strike [DE 110] for the reasons stated herein. Left open for the factfinder is the question of how much indemnity Supreme may recover from First Specialty. The Court will contact the parties to set a scheduling conference to explore the next steps in this case.

    SO ORDERED.

    ENTERED: September 28, 2018

                                           /s/ JON E. DEGUILIO
                                           Judge
                                           United States District Court